**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

BRANDYWINE COMMUNICATIONS
TECHNOLOGIES, LLC,

        Plaintiff,

v.                                         Case No:  6:12-cv-272-Orl-36DAB

T-MOBILE USA, INC.,

        Defendant.
_____/

## ORDER

This cause comes before the Court upon Defendant T-Mobile U.S.A., Inc.'s ("T-Mobile" or "Defendant") Motion to Dismiss Claims of Induced, Contributory, Willful, and Joint Infringement ("Motion to Dismiss") (Doc. 17).   Plaintiff Brandywine Communications Technologies, LLC ("Brandywine" or "Plaintiff") filed a Memorandum in Opposition to the Motion to Dismiss  ("Response") (Doc. 21), to which T-Mobile replied (Doc. 25).  The Motion to Dismiss is ripe for review.  For the reasons that follow, Defendant's Motion to Dismiss will be granted.

## I.  BACKGROUND

### A.  Facts[1]

Brandywine filed its Complaint in this action on February 21, 2012, alleging that T-Mobile infringes upon U.S. Patent Numbers 5,719,922 (" '922 Patent") and 6,236,717 (" '717 Patent") in violation of 35 U.S.C. § 271(a), (b), and (c) (Doc. 1).  Brandywine is a patent holding

---

[1] The following statement of facts is derived from Plaintiff's Complaint (Doc. 1), the allegations of which the Court must take as true in ruling on a motion to dismiss. *Linder v. Portocarrero,* 963 F.2d 332, 334 (11th Cir. 1992); *Quality Food de Centro America, S.A. v. Latin American Agribusiness Development Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

limited liability company with its principal place of business in Villanova, Pennsylvania.  *Id.* ¶ 2. Defendant is a Delaware corporation whose principal place of business is in Bellevue, Washington.  *Id.* ¶ 3.

### i.  Alleged Infringement of the '922 Patent

On February 17, 1998, the '922 Patent, entitled "Simultaneous Voice/Data Answering Machine," was legally issued by the United States Patent and Trademark Office ("USPTO") to Gordon Bremer and Richard Kent Smith (collectively "the '922 Inventors"). The '922 Patent has subsequently been assigned to Plaintiff.  *Id.* ¶ 9.  T-Mobile has had actual knowledge of the '922 Patent, and its alleged infringement of that patent, since at least September 29, 2011, when T-Mobile was served with Plaintiff's original complaint in *Brandywine Communications Technologies, LLC v. Apple, Inc., et. al*, Case 6:11-cv-1512-36DAB (M.D. Fla. 2011) (the "Original Action").  *Id.* ¶ 10.  T-Mobile also had knowledge since December 13, 2011, when Plaintiff sent a letter providing notice of T-Mobile's alleged infringement of the '922 Patent.  *Id.*

Plaintiff alleges that T-Mobile has and continues to directly and indirectly infringe on one or more claims of the '922 Patent " by making, using, selling and offering for sale, services and products that infringe and/or perform processes that infringe one or more claims of the '922 Patent."  *Id.* ¶ 11.  The T-Mobile products that Plaintiff accuses of infringing the '922 Patent include handsets such as the Comet, G2x, Sidekick 4G, and the HTC Wildfire S (collectively "the '922 Accused Products").  *Id.* ¶ 12.[2]  Also, Brandywine alleges that T-Mobile has committed joint infringement of the '922 Patent, because T-Mobile and its handset makers, including HTC America, Inc,. have, acting jointly, infringed and continue to infringe on at least

---

[2] Although only specifically listing these four T-Mobile products, Brandywine alleges that this list is not exhaustive, and further accuses T-Mobile of "providing services, such as voicemail, to handsets."  Doc. 1, ¶¶ 12, 24.

claim 7 of the '922 Patent.  *Id. ¶* 14.  Plaintiff alleges that T-Mobile's continued infringement despite its knowledge of the '922 Patent and Plaintiff's accusations of infringement has been objectively reckless and willful.  *Id. ¶* 14.

Plaintiff further alleges that since at least September 29, 2011, T-Mobile has committed and continues to commit acts of contributory infringement of at least claims 1 and 7 of the '922 Patent in violation of 35 U.S.C. § 271(c), because T-Mobile has made, used, sold, offered to sell, and/or imported, or continues to make, use, sell, offer to sell services and products including the '922 Accused Products.  *Id. ¶¶* 15-16.  Plaintiff argues that the '922 Accused Products have no substantial non-infringing uses, and are especially adapted to work in a system or carry out a method claimed in the '922 Patent. *Id. ¶¶* 15-16.  T-Mobile provides such products to its customers, whose use of such products constitutes direct infringement of at least claim 1 of the '922 Patent.  *Id. ¶* 15.  T-Mobile also provides such services and products to its handset makers, including, but not limited to HTC America, Inc., and its handset makers' customers, whose use constitutes direct infringement of at least claim 7 of the '922 Patent.  *Id. ¶* 16.

Additionally, Plaintiff alleges that T-Mobile has induced and continues to induce others to infringe at least claims 1 and 7 of the '922 Patent under 35 U.S.C. § 271(b), by: "actively and knowingly aiding and abetting others to infringe, including, but not limited to consumers whose use of such services and products constitutes direct infringement of claim 1 of the '922 Patent", and "its handset makers, such as HTC America, Inc., whose use of such services constitutes direct infringement of claim 7 of the '922 Patent." *Id. ¶¶* 17, 18.  T-Mobile's alleged aiding and abetting includes advertising, instructing, and/or supporting the consumers' directly infringing use, and marketing and promoting the sale of T-Mobile Accused Services and Products by others, such as HTC America, Inc.  *Id.*

Brandywine alleges it has and continues to suffer damages due to T-Mobile's infringement, contributory infringement, and inducement of infringement of the '922 Patent. *Id.* ¶ 19.

### ii.  Alleged Infringement of the '717 Patent

On May 22, 2001, the '717 Patent, entitled "Simultaneous Voice/Data Answering Machine," was legally issued by the USPTO to Gordon Bremer and Richard Kent Smith (collectively "the '717 Inventors"), and has subsequently been assigned to Plaintiff. *Id.* ¶ 21.  T-Mobile has had actual knowledge of the '717 Patent, and its alleged infringement of that patent, since at least September 29, 2011, when T-Mobile was served with Plaintiff's complaint in the Original Action. *Id.* ¶ 22.  Also, T-Mobile has had knowledge since December 13, 2011, when Plaintiff sent a letter providing notice of T-Mobile's infringement of the '717 Patent. *Id.* Plaintiff alleges that T-Mobile has and continues to directly and indirectly infringe on one or more claims of the '717 Patent by making, using, selling and offering for sale, services and products that infringe and/or perform processes that infringe one or more claims of the '717 Patent. *Id.* ¶ 23.  Plaintiff accuses the '922 Accused Products of also infringing upon the '717 Patent. *Id.* ¶ 24.

Brandywine alleges that  T-Mobile has committed joint infringement of the '717 Patent, because T-Mobile and its handset makers, including HTC America, Inc., have, acting jointly, infringed and continue to infringe on at least claim 15 of the '717 Patent. *Id.* ¶ 25.  Plaintiff alleges that T-Mobile's continued infringement despite its knowledge of the '717 Patent and Plaintiff's accusations of infringement have been objectively reckless and willful. *Id.* ¶ 26.

Plaintiff further alleges that since at least September 29, 2011, T-Mobile has committed and continues to commit acts of contributory infringement of at least claims 1 and 15 of the '717

Patent in violation of 35 U.S.C. § 271(c), because T-Mobile has made, used, sold, offered to sell, and/or imported, or continues to make, use, sell, offer to sell services and products including the '717 Accused Products.  *Id.* ¶¶ 27-28.  Plaintiff argues that the '717 Accused Products have no substantial non-infringing uses, and are especially adapted to work in a system or carry out a method claimed in the '717 Patent, for example by claims 1 and 15.  *Id.*  T-Mobile provides such services and products to its customers, whose use of these products constitutes direct infringement of at least claim 1 of the '717 Patent.  *Id.* ¶ 27.  T-Mobile also provides such services and products to its handset makers, including, but not limited to HTC America, Inc., and its handset makers' customers, whose use of such services and products constitutes direct infringement of at least claim 15 of the '717 Patent.  *Id.* ¶ 28.

Additionally, Plaintiff alleges that T-Mobile has induced and continues to induce others to infringe at least claims 1 and 15 of the '717 Patent under 35 U.S.C. § 271(b), by actively and knowingly aiding and abetting others to infringe, including, but not limited to consumers whose use of such services and products constitutes direct infringement of claim 1 of the '717 Patent, and its handset makers, such as HTC America, Inc., whose use of such services constitutes direct infringement of claim 15 of the '717 Patent.  *Id.* ¶¶ 29-30.  T-Mobile's alleged aiding and abetting includes advertising, instructing, and/or supporting the consumers' directly infringing use, and marketing and promoting the sale of T-Mobile Accused Services and Products by others, such as HTC America, Inc.  *Id.*

Brandywine alleges it has and continues to suffer damages due to T-Mobile's infringement, contributory infringement, and inducement of infringement of the '717 Patent.  *Id.* ¶ 31.

### B.  Procedural History

On September 13, 2011, Plaintiff filed a complaint in the Original Action, asserting infringement of the '922 and '717 Patents against T-Mobile and twenty-three other defendants. *See Brandywine Communications Technologies, LLC v. Apple et. al*, 6:11-cv-1512-Orl-35DAB, at Doc. 1.   The Court severed the case into separate actions.   *Id.*, at Doc. 4.   Consequently, Plaintiff filed its Complaint in this action on February 21, 2012 (Doc. 1).   The instant Motion to Dismiss followed.

## II.    STANDARD

Although the substantive law of the Federal Circuit governs patent cases, courts apply the law of the regional circuit when evaluating procedural issues.   *See In re Bill of Lading*, 681 F.3d 1323, 1331 (Fed. Cir. 2012) ("Because it raises a purely procedural issue, an appeal from an order granting a motion to dismiss for failure to state a claim upon which relief can be granted is reviewed under the applicable law of the regional circuit.")*; In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) ("Because this petition does not involve substantive issues of patent law, this court applies the laws of the regional circuit in which the district court sits."); *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355-56 (Fed. Cir. 2007) ("A motion to dismiss for failure to state a claim upon which relief can be granted is a purely procedural question not pertaining to patent law.   Thus, on review we apply the law of the regional circuit.").

To survive a motion to dismiss, a pleading must comply with Fed. R. Civ. P. 8(a)(2) by including a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).   Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient.   *Bell Atlantic Corp, et al. v. Twombly, et al.*, 550 U.S. 544, 555 (2007).    Mere naked assertions, too, are not sufficient.   *Id.*   A complaint must contain sufficient factual matter, which, if accepted as true,

would "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all factual allegations in a complaint as true and construe them in the light most favorable to the plaintiff. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Iqbal*, 556 U.S. at 678. Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679.

## III.    ANALYSIS

In its Motion to Dismiss, T-Mobile argues that the Court should dismiss Plaintiff's claims of induced infringement pursuant to 35 U.S.C. § 271(b), contributory infringement pursuant to 35 U.S.C. § 271(c), willful infringement, and joint infringement for failure to state a claim upon which relief may be granted. Doc. 17, pp. 5-22.

### A.  Compliance with Form 18 is insufficient to plead a claim of indirect infringement

A party is liable for induced infringement if it "actively induces infringement of a patent." 35 U.S.C. § 271(b). The Eleventh Circuit has determined that to prove inducement of infringement, a patentee must demonstrate that the accused infringer had the intent to cause the acts which constitute the infringement. *Mee Indus. v. Dow Chemical Co.*, 608 F.3d 1202, 1215 (11th Cir. 2010).

As a threshold matter, the parties dispute the requirements for pleading induced infringement, specifically whether compliance with Form 18 of the Federal Rules of Civil Procedure suffices at the pleading stage, and if Brandywine must demonstrate the alleged

infringer had pre-suit knowledge of the patent and intent to cause others to infringe upon the patent. Doc. 17, pp. 12-18; Doc. 21, pp. 4-12.

The Federal Circuit's recent opinion in *In re Bill of Lading* provides persuasive authority on the pleading requirements for induced infringement.[3] *In re Bill of Lading*, 681 F.3d 1323, 1350-51 (Fed. Cir. 2012).  The Federal Circuit concluded that whereas fulfilling the requirements in Form 18 is sufficient to plead a claim of direct infringement, "Form 18 should be strictly construed as measuring only the sufficiency of allegations of direct infringement, and not indirect infringement" and a court must look to Supreme Court precedent for guidance regarding pleading requirements for claims of indirect infringement. *Id.* at 1336-37.  Specifically, to state a claim for induced infringement, a plaintiff must affirmatively plead "facts plausibly showing that [Defendants] specifically intended their customers to infringe the [patent] and knew that the customer's acts constituted infringement." *Id.* at 1339.  Moreover, the Supreme Court has clarified that induced infringement requires "knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S.Ct. 2060, 2068 (2011); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) ("[I]nducement requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.").

---

[3] Defendant filed a Notice of Supplemental Authority on June 19, 2012, arguing that the Federal Circuit's recent decision on pleading requirements for patent claims "provides controlling authority regarding the standard for pleading indirect patent infringement."  Doc. 32, p. 1; *In re Bill of Lading*, 681 F.3d 1323 (Fed. Cir. 2012).  In its Response to Defendant's Notice of Supplemental Authority, Plaintiff argues that the sufficiency of a pleading is a procedural issue, and thus this Court must apply Eleventh Circuit precedent, not *In re Bill of Lading*, in analyzing the sufficiency of its allegations.  Doc. 35, pp. 1-2.  The Court agrees that in evaluating the sufficiency of a claim on a motion to dismiss, it applies the law of the Eleventh Circuit and Supreme Court interpretations of the federal pleading requirements.  Nevertheless, the recent Federal Circuit opinion is persuasive authority in analyzing the sufficiency of Plaintiff's Complaint.

Brandywine maintains that the Federal Circuit's opinion in *In re Bill of Lading* is merely persuasive authority, and that "[t]he law of this Circuit is clear: the sufficiency of an indirect infringement claim is judged according to the same standard as direct infringement claims, which only need to comply with the minimal requirements of Form 18".  Doc. 21, p. 8; Doc. 35, p. 1. However, in support of its contention that Form 18 is sufficient in this Circuit for pleading claims of induced infringement, Brandywine cites no Eleventh Circuit cases, and three distinguishable district court cases.  *CBT Flint Partners, LLC v. Goodmail Systems, Inc.* 529 F.Supp. 2d 1376 (N.D. Ga. 2007); *Aspex Eyewear, Inc. v. Hardy Life, LLC*, 2010 WL 2926511 (S.D. Fla. 2010); *Minsburg International, Inc. v. Frontier Devices, Inc.,* 2011 WL 1326863 (M.D. Fla. 2011). Moreover, each of these cases predates both the Federal Circuit's contrary decision in *In re Lading*, and the Supreme Court's controlling opinion in *Global-Tech*.

In *CBT Flint*, after acknowledging that the Eleventh Circuit has not decided whether *Twombly* has altered pleading standards in the patent context, the court finds that though Form 18 "only provides a model for pleading direct infringement, there is no principled reason, at least not one advanced by the Defendant, for requiring more factual detail when the claim is one for contributory infringement." *CBT Flint Partners*, 529 F. Supp. 2d at 1380.  However, the *CBT Flint* court was motivated to accept plaintiff's limited complaint in part because of the Northern District of Georgia's extensive patent rules requiring "plaintiffs to disclose a great deal of extremely detailed information" early in a case. *Id.* at 1380-81. The *Aspex Eyewear* court found that plaintiff's allegation of inducement infringement was sufficient under the pleading standards.  2010 WL 2926511, *2.  Whereas the *Aspex* plaintiff alleged that two specific defendants were aiding and abetting infringement because the identified eyewear was being sold under their brand name, in this action Brandywine makes a more ambiguous allegation, and

provides less detail.  *See* Doc. 1, ¶¶ 17, 29.[4]  Brandywine argues that the Federal Circuit's recent decision *In re Lading,* explicitly finding that Form 18 is insufficient to plead indirect infringement, is not controlling authority, while relying upon decisions like *Minsburg,* which interprets prior Federal Circuit opinions, to support its claim that Form 18 is sufficient in the Eleventh Circuit.  The *Minsburg* court applied the Federal Circuit's then current decision in *McZeal*, finding that plaintiff's claim for indirect infringement provided defendants "fair notice of what the … claim is and the grounds upon which it rests".  *Minsburg International, Inc.,* 2011 WL 1326863, *3.   Despite its claim, Brandywine has not shown that the Eleventh Circuit permits pleadings that comply with Form 18 to allege claims of induced infringement.  Indeed, both the persuasive decision in *In re Billing* and controlling Supreme Court authority *Global-Tech* hold otherwise.  Accordingly, compliance with Form 18 is insufficient to plead a claim of induced infringement.

### B.  A claim of induced infringement requires showing pre-suit knowledge of the patent

A claim for induced infringement requires that the defendant "actively induces" infringement, which "requires knowledge of the existence of the patent that is infringed." *Global-Tech*, 131 S. Ct. at 2068.[5]  A plaintiff has the burden to demonstrate that the defendant

---

[4] Plaintiff alleges that "since at least September 29, 2011, T-Mobile has induced and continues to induce others to infringe at least claim 1 of the '922 patent under 35 U.S.C. § 271(b) by, among other things, actively and knowingly aiding and abetting others to infringe, including, but not limited to consumers whose use of such services and products constitutes direct infringement of at least claim 1 of the '922 patent.   T-Mobile's aiding and abetting includes, for example, advertising, instructing, and/or supporting the consumers' directly infringing use."  Doc. 1, at ¶ 17.  Paragraph 29 regarding the '717 Patent is substantially identical.

[5] In order to establish a claim for induced infringement, the patentee must show that: (1) there has been direct infringement; (2) the alleged infringer knowingly induced infringement; and (3) the alleged infringer possessed specific intent to encourage another's infringement. *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.,* 420 F.3d 1369, 1378 (Fed. Cir. 2005)

was aware of the patent and actively and knowingly aided and abetted another's direct infringement. *Id.*; *DSU Med. Corp. v. JMS Co.*, 471 F.3d at 1305. T-Mobile argues that knowledge of the patents gained by Plaintiff's filing of the lawsuit is insufficient to plead the required knowledge. Doc. 17, p. 6. By contrast, Plaintiff maintains that it need not plead pre-suit knowledge of the patent in alleging indirect infringement. Doc. 21, pp. 5-7. In the alternative, Plaintiff maintains that it does allege Defendant's pre-suit knowledge. *Id.*, p. 7.

The weight of authority addressing the knowledge required for indirect infringement, especially following the Supreme Court's decision in *Global-Tech*, requires a plaintiff to allege that defendant had pre-suit knowledge of the patents-in-suit. *Xpoint Technologies, Inc. v. Microsoft Corp.*, 730 F.Supp.2d 349, 357 (D. Del. 2010) (dismissing claims of indirect infringement because "knowledge after filing of the present action is not sufficient for pleading the requisite knowledge for indirect infringement"); *Mallinckrodt, Inc. v. E-Z-Em Inc.,* 670 F. Supp. 2d 349, 354 n.1 (D. Del. 2009) ("The Court is not persuaded by Plaintiffs' contention that the requisite knowledge can be established by the filing of Plaintiff's Complaint."); *Aguirre v. Powerchute Sports, LLC*, 2011 WL 2471299, *3 (W.D. Tex. 2011) ("To the extent Aguirre relies on knowledge of Aguirre's patent after the lawsuit was filed, such knowledge is insufficient to plead the requisite knowledge for indirect infringement.").[6]

Additionally, in *Zamora Radio, LLC v. Last.FM, Ltd*, the court, in granting summary judgment on the claim of induced infringement, concludes that there could be no indirect infringement because "[plaintiff] has offered no evidence that Defendants had any pre-suit

---

[6] Although Plaintiff correctly notes that the *Aguirre* court dismissed plaintiff's claims of contributory and indirect infringement for complete failure to plead the required knowledge, the court explains that to the extent plaintiffs rely on knowledge acquired by plaintiff's lawsuit, such knowledge is insufficient to plead the requisite knowledge for indirect infringement. *Aguirre*, 2011 WL 2471299 at *3.

knowledge of the '399 Patent." *Zamora Radio, LLC v. Last.FM, Ltd*, 758 F. Supp. 2d 1242, 1257 (S.D. Fla. 2010). Brandywine's argument that *Zamora* is inapplicable precedent because the court evaluates induced infringement upon a motion for summary judgment, is unpersuasive. Doc. 21, p. 6. Indeed, the *Zamora* court held that plaintiffs cannot establish induced infringement without demonstrating pre-suit knowledge of the patent-in-suit. *Zamora*, 758 F. Supp. 2d at 1257. Here, Brandywine has not even alleged such knowledge, and therefore could not establish the required element. Similarly, the *F & G Research, Inc. v. Google, Inc.* court notes that there is no evidence defendant received notice or otherwise knew of the patents before plaintiff's initial complaint was filed, and as such plaintiff's claim for inducement infringement failed. *F & G Research, Inc. v. Google, Inc.*, 2007 WL 2774031,*15 (S.D. Fla. 2007).

In its response, Plaintiff does not cite any case within the Eleventh Circuit finding that knowledge of the patent can be acquired with the filing of a complaint. Moreover, the cases Plaintiff cites from outside the Circuit to support its proposition that pre-suit knowledge is not required to plead induced infringement predate the Supreme Court's ruling that "induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement". [7,8] *Global-Tech*, 131 S. Ct. at 2068; Doc. 21, pp. 5-7. Also, because notice of the patent is necessarily provided by a complaint, finding that a complaint provides sufficient knowledge for induced infringement would vitiate the Supreme Court's holding in *Global-Tech*

---

[7] Indeed, Plaintiff fails to address the Supreme Court's authoritative clarification in *Global-Tech*, finding that induced infringement requires knowledge of the patent and "that the induced acts constitute patent infringement." *Global-Tech*, 131 S. Ct. at 2068.

[8] Compare *Global-Tech*'s Order dated May 31, 2011 to: *Broadcom Corp. v. Qualcomm*, 2007 U.S. Dist. LEXIS 62764, * 14 (C.D. Ca. 2007) (upholding a verdict against defendant for indirect infringement, finding that defendant's customer support practices showed specific intent that this assistance be used and that defendant had knowledge of the patent at least by the time of plaintiff's complaint); *Elan Microelectronics Corp. v. Apple, Inc.*, 2009 WL 2972374 (N.D. Ca. 2009) (granting defendant's motion to dismiss counterclaims because of ambiguity).

that an allegation of knowledge of the patent is required to state a claim for induced infringement. Doc. 17, p. 7.

Brandywine argues, in the alternative, that it does allege T-Mobile's pre-suit knowledge of the patents-in-suit. Doc. 21, pp. 7-8. Brandywine's argument is that because it filed a suit against T-Mobile and twenty-three other defendants in the Original Action on September 29, 2011, and following the Court's severance Order filed the operative Complaint against T-Mobile, that T-Mobile had knowledge of the patents and alleged infringement at least as of September 29, 2011. Doc. 21, p. 7; *see* Doc. 1, ¶¶ 10, 22. This argument is unpersuasive. Brandywine cannot avoid the pre-suit knowledge requirement by relying on either the Original Action or letters sent to T-Mobile during the pendency of the lawsuit, when the parties were already engaged in a dispute as to T-Mobile's alleged infringement.

### C. Brandywine's claims of inducement infringement are insufficient for failure to plead requisite knowledge or intent

Having concluded that compliance with Form 18 is insufficient to plead indirect infringement, and that a plaintiff must allege pre-suit knowledge of the patent-in-suit to establish the scienter required for indirect infringement, it is evident that Brandywine fails to adequately plead induced infringement. *In re Bill of Lading*, 681 F.3d at 1339; *Global-Tech Appliances, Inc.* 131 S. Ct. at 2068; *DSU Med. Corp.,* 471 F.3d at 1306 ("[I]nducement requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement."). To establish a claim for induced infringement, a patentee must show that: (1) there has been direct infringement; (2) the alleged infringer knowingly induced infringement; and (3) the alleged infringer possessed specific intent to encourage another's infringement. *Zamora,* 758 F. Supp. 2d at 1248; *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005). Indeed, for induced

infringement, "mere knowledge of possible infringement by others does not amount to inducement; specific intent and actions to induce infringement must be proven." *DSU Medical Corp.*, 471 F.3d at 1305.

Brandywine has not alleged either knowledge of the patents-in-suit before the litigation, or facts plausibly showing that T-Mobile specifically intended their customers to infringe the patents and knew that the customer's acts constituted infringement. *See In re Bill of Lading*, 681 F.3d at 1339; *Global-Tech*, 131 S. Ct. at 2068. The Court agrees with T-Mobile that Brandywine's conclusory allegations that T-Mobile "actively and knowingly" induced infringement are inadequate to support the element requiring intent and active inducement. *See* Doc. 1, ¶¶ 17, 18, 29, 30; Doc. 17, pp. 10-11; *see also Digitech Information Sys, Inc. v. Ally Financial, Inc.*, 2011 WL 3875407, at *4 (M.D. Fla. 2011) (finding that pleading the phrase "actively induces others to infringe," alone, is conclusory when pleading induced infringement).[9] Indeed, such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Moreover, having failed to allege pre-suit knowledge of the patents-in-suit, Brandywine has not demonstrated the requisite intent. Therefore, because Brandywine does not plead pre-suit knowledge and provides formulaic recitations of the required element of "active inducement" under 35 U.S.C. § 271(b), its claims of induced infringement of the '922 and '717 Patents fail to state a claim upon which relief can be granted and will be dismissed.

---

[9] In its Response, Brandywine argues that *Digitech* is not relevant authority because the court examines whether plaintiff has made a *prima facie* showing of personal jurisdiction over defendant. Doc. 21, p. 10. However, in finding that plaintiff failed to adequately plead that defendant had committed tortious conduct in Florida, the *Digitech* court evaluates what is required to adequately plead induced infringement, indicating that alleging that a defendant "infringes and actively induces others to infringe", without more factual allegations, is insufficient. *Digitech*, 2011 WL 3875407, at *4. As such, *Digitech* supports Defendant's argument.

### D.  Brandywine fails to plead a claim for contributory infringement

Contributory infringement occurs if a party sells or offers to sell a material or apparatus for use in practicing a patented process, and that "material or apparatus" is material to practicing the invention, has no substantial non-infringing uses, and is known "to be especially made or especially adapted for use in the infringement of such patent."  35 U.S.C. § 271(c); *In re Bill of Lading*, 681 F.3d at 1337; *Lucent Techs. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009). In *Global-Tech*, the Supreme Court clarified that "§ 271(c) requires knowledge of the existence of the patent that is infringed."  *Global-Tech,* 131 S. Ct. at 2068.  In addition to pleading requisite knowledge of the patent-in-suit at the time of infringement, a claim for contributory infringement must plead acts allowing an inference that the components sold or offered for sale have no substantial non-infringing uses.  *In re Bill of Lading*, 681 F.3d 1323 at 1337; *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.,* 424 F.3d 1293, 1312 (Fed. Cir. 2005).  The Federal Circuit held that in the context of contributory infringement, a substantial non-infringing use is a use that is "not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental."  *Id.*, *citing Vita-Mix Corp. v. Basic Holdings, Inc.*, 581 F.3d 1317, 1327-29 (Fed. Cir. 2009).

T-Mobile argues that Brandywine's claims of contributory infringement must be dismissed for failure to plead a claim upon which relief can be granted.  Doc. 17, pp. 11-17; Fed. R. Civ. P. 12(b)(6).  Specifically, T-Mobile maintains that: (1) as with induced infringement, Brandywine has not pled T-Mobile's pre-suit knowledge of the patents-in-suit; (2) alleging that T-Mobile's accused products "have no substantial non-infringing uses" is insufficient; and (3) the Complaint does not allege what component of the accused wireless handsets are "especially adapted to work in a system or carry out a certain method."  *Id.*; citing Doc. 1, ¶¶ 15, 27.

Brandywine maintains that its contributory infringement claims are sufficient.  Doc. 21, pp. 10-12.   The Court will address each contested component of Plaintiff's claim of contributory infringement.

First, the statute provides that an accused infringer must know that the product is designed to infringe a patent, which requires a defendant to have knowledge of the patent.  35 U.S.C. § 271(c); *Global-Tech,* 131 S. Ct. at 2067-68 (noting that "knowledge of the patent" has long been a requirement); *Aro Mfg. Co., Inc. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964) ("§ 271(c) does require a showing that the alleged contributory infringer knew that the combination for which his component is especially designed was both patented and infringing.").  As discussed with respect to induced infringement, the Supreme Court's holding in *Global-Tech* that knowledge is required for indirect infringement is only meaningful if such knowledge is alleged prior to receipt of a complaint.[10,11]

Second, Brandywine's allegations that the '922 Accused Products and the '717 Accused Products "have no substantial non-infringing uses", without more, is insufficient to support a claim of contributory infringement pursuant to § 271(c).  *See* Doc. 1, at ¶¶ 16, 28.  As T-Mobile notes, the products Brandywine identifies as infringing upon the patents-in-suit are mobile phones for which it seems implausible that there exists no substantial non-infringing use.  Doc. 1, ¶¶ 12, 24; *see In re Bill of Lading*, 681 F.3d at 1338 ("[f]or purposes of contributory

---

[10] As discussed, the cases Plaintiff cites where a court permits knowledge of the patents-in-suit with the filing of the complaint were decided prior to *Global-Tech*'s clarification of the pleading requirements for patent lawsuits post *Iqbal* and *Twombly*.  Doc. 17, p. 13; *see, e.g.*, *CBT Flint Partners*, 529 F.Supp. 2d 1376 (N.D. Ga. 2007); *Aspex Eyewear*, 2010 WL 2926511 (S.D. Fla. 2010); *Minsburg,* 2011 WL 1326863 (M.D. Fla. 2011).

[11] Brandywine alleges that T-Mobile learned of the patents-in-suit in September 2011, with receipt of its complaint in the Original Action, *Brandywine Commc'ns Techs. LLC v. Apple, Inc. et al.*, 6:11-cv-1512-MSS-DAB.  *See* Doc. 1, ¶¶ 10, 22.  As discussed in section III(B), this is insufficient to allege the knowledge element of contributory infringement.

infringement, the inquiry focuses on whether the accused products can be used for purposes *other than* infringement") (emphasis in original).  In response, Brandywine argues that its short and plain statement alleging contributory infringement are permissible under Eleventh Circuit law.  Doc. 21, p. 11.  However, because the cases Brandywine cites fail to discuss the adequacy of an allegation of no substantial non-infringing uses, this argument is unpersuasive.  *See Aspex Eyewear*, 2010 WL 2926511, * 2 (S.D. Fla. 2010) (affirming that a plaintiff must demonstrate specific intent for induced infringement, but providing no analysis about the Circuit's standard for pleading no substantial non-infringing uses); *Mesh Comm, LLC v. EKA Sys., Inc.*, 2010 WL 750337 (M.D. Fla. 2010) (sustaining plaintiff's infringement allegations without discussion of allegation of no substantial non-infringing uses).[12]

Third, the Complaint does not allege what component of the accused wireless phones are components "especially adapted" for performing patented methods.  *See* 35 U.S.C. § 271(c). Indeed, Brandywine does not allege that T-Mobile sells anything that is "material" to an identified patented invention: it alleges merely the infringing "use" of Defendant's "Services and Products" which "include, but are not limited to, selling handsets such as the T-Mobile Comet, G2x, and Sidekick 4G, and the HTC Wildfire S, and/or providing services, such as voicemail, to handsets."  Doc. 1, ¶¶ 12, 24.  T-Mobile argues that Brandywine's allegation that the unspecified "use" of a largely undefined group of devices and services, including cell phones, constitutes contributory infringement is insufficient.  Doc. 17, pp. 14-15.  Moreover, T-Mobile maintains that Brandywine's allegation of contributory infringement must be dismissed as a matter of law to the extent Brandywine alleges the provision of services, because § 271(c) squarely applies to

---

[12]  In addition to not providing relevant authority for the point cited, these cases predate the Supreme Court's articulation of the appropriate pleading standard for indirect infringement in *Global-Tech*, a case which the Plaintiff fails to address.

materials, components, or apparatus, but not services.  *Id.*, p. 16; *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1357 (Fed. Cir. 2007) (rejecting patentee's argument that contributory infringement extends to the sale of a service, a reading that is "contrary to both the language and legislative history of section 271(c).").

In response, Brandywine argues that despite using the label "Accused Services and Products", its allegations of contributory infringement never point to a service by itself, but rather to a service, like voicemail, delivered as part of phones, through software installed on the phones.  Doc. 21, p. 11.  Brandywine concedes that while the sale of a service alone is not contributory infringement, T-Mobile is accused of selling a device containing software which enables the service, and this does constitute contributory infringement.  *Id.*; *citing Ricoh Co., Ltd. v. Quanta Computer, Inc.*, 550 F.3d 1325, 1340 (Fed. Cir. 2008).  Brandywine's explanation of its vague allegations in its Response will not be considered, as the Court determines the sufficiency of an allegation by looking only to the Complaint.  *See Speaker v. U.S. Dept. of Health and Human Servs. Centers for Disease Control*, 623 F.3d 1371, 1379 (11th Cir. 2010). [13] Brandywine's Complaint has not identified what T-Mobile "material or apparatus" is material to practicing an invention, has no substantial non-infringing uses, and is known "to be especially made or especially adapted for use in the infringement of such patent."  35 U.S.C. § 271(c); *In re Bill of Lading*, 681 F.3d 1323 at 1337.  Additionally, Brandywine has not alleged T-Mobile's pre-suit knowledge of the patents-in-suit, and has implausibly concluded that T-Mobile's accused products and services have no substantial non-infringing uses.  Therefore, Brandywine's claims of contributory infringement of the '922 and '717 Patents will be dismissed.

---

[13] As Defendant argues, Plaintiff cannot add facts bolstering its allegations within its Response to a Motion to Dismiss that are not contained in its Complaint, such as the more detailed explanation of its "voicemail service or software".  Doc. 25, p. 1; *see* Doc. 21, pp. 10-11.

**E. Brandywine's claim of willful infringement and prayer for enhanced damages will be dismissed**

T-Mobile moves to strike Brandywine's prayer for enhanced damages pursuant to 35 U.S.C. § 284, which authorizes a district court "to increase the damages up to three times the amount found or assessed" upon a showing of willful infringement.  Doc. 17, pp. 17-18; *Avocent Huntsville Corp. v. ClearCube Technology, Inc.*, 2006 WL 2109503, * 25 (N.D. Ala. 2006); *SRIA International, Inc. v. Advanced Technology Laboratories, Inc.*, 127 F.3d 1462, 1464 (Fed. Cir. 1997).  To establish willful infringement, a plaintiff must make a "showing of objective recklessness."  *In re Seagate Technology, LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007).[14] Whether infringement is willful is a question of fact and is determined based on the totality of the circumstances.  *ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1311-12 (Fed. Cir. 2007).

In order to willfully infringe a patent, the alleged infringer must know of the patent.  *i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 860 (Fed. Cir. 2010) ("Infringement is willful when the infringer was aware of the asserted patent, but nonetheless 'acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.'"); *Pandora Jewelry LLC v. Cappola Capital Corp.*, 2009 WL 2029964, *1 (M.D. Fla. 2009) (holding that knowledge of the patent is required for willful infringement).  Accordingly, T-Mobile argues that Brandywine's failure to allege pre-suit knowledge of the patents-in-suit is fatal to its willful

---

[14] "[T]o establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. The state of mind of the accused infringer is not relevant to this objective inquiry. If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *In re Seagate*, 497 F.3d at 1371.

infringement claim.  Doc. 17, p. 18; *In re Seagate*, 497 F.3d at 1374 ("when a complaint is filed, a patentee must have a good faith basis for alleging willful infringement. So a willfulness claim asserted in the original complaint must necessarily be grounded exclusively in the accused infringer's pre-filing conduct.").  T-Mobile cites additional cases where courts have dismissed claims of willful infringement for failure to allege pre-suit knowledge of the patents.  *Solannex, Inc. v. MiaSole*, 2011 WL 4021558, *3 (N.D. Cal. 2011) (dismissing claim of willful infringement because plaintiff failed to allege defendant "had any pre-suit knowledge of the [patent] or that its conduct rises to the level of 'objective recklessness' required to support an allegation of willful infringement"); *IpVenture, Inc. v. Cellco Partnership*, 2011 WL 207978, *2 (N.D. Cal. 2011) (dismissing claim of willful infringement because of the failure to allege facts supporting pre-suit knowledge of patents-in-suit).

In its Response, Brandywine argues that knowledge of the patent may be gained post-filing, stating that "[m]any courts agree that the *Seagate* case does not create a per se bar to plead willful infringement after the filing of the suit."  Doc. 21, p. 17.  However, Brandywine mischaracterizes *Seagate* and the cases it alleges support this position.  In *Seagate*, the Federal Circuit concludes that there is no *per se* rule that a patentee must prevail on its request for a preliminary injunction in order to assert a claim of willfulness based solely on post-filing conduct.  *In re Seagate*, 497 F.3d at 1774.  The *Seagate* court cites cases where courts permit plaintiffs to amend complaints and add claims of willfulness when they have not moved for an injunction, and cases rejecting the argument that failure to move for an injunction forfeits a claim of willfulness.  *Id.*  As Brandywine has not moved for a preliminary injunction, the issue of

whether or not it can claim willful infringement without having prevailed on a request for injunctive relief is irrelevant.[15]

Importantly, none of the cases Brandywine cites suggest that a patentee could properly allege a claim of willful infringement without alleging knowledge of the patent before the time of the alleged willful infringement.  For example, the *Ultratech Int'l, Inc. and Aqua-Leisure Industries, Inc. v. Swimways Corp.* court permits plaintiffs to amend a complaint and add an allegation of willful infringement because while "at the time the initial Complaint was filed, they did not have a good faith basis upon which to assert a claim for willful infringement", plaintiffs had sufficient grounds to add such a claim "due to Defendant's continued use of the [patent] throughout, and subsequent to, the reexamination proceeding."  2009 WL 8590873, *2 (M.D. Fla. 2009).[16]  The *Ultratech* court affirmed that to prove willful infringement, plaintiffs must establish the existence of an objectively high risk that the defendant's action constituted infringement of a valid patent, and that this risk was known by the defendant or was so obvious that it should have been known.  *Id.*, at *4; *citing In re Seagate*, 497 F.3d at 1371.  Indeed, by granting leave to amend to add a willfulness claim following evidence of post-suit conduct, *Ultratech* reaffirms the logical conclusion that pleading willful conduct without an allegation of pre-suit notice is insufficient.

Likewise, in *Affinity Labs of Tx. v. Alpine Elecs. of America, Inc., et al.*, the court clarifies that defendants are not suggesting that the facts alleged do not state a claim for

---

[15] Brandywine argues that is could not have sought preliminary injunctive relief, citing *eBay, Inc. v. MercExchange, LLC,* 547 U.S. 388, 394 (2006).  Doc. 21, p. 17.  Curiously, T-Mobile cites the same case in arguing that Brandywine was not precluded from obtaining injunctive relief.  Doc. 25, p. 9, n.6.  Given Brandywine has not sought a preliminary injunction, the Court need not address this inconsistency.

[16] Brandywine cites this case with an incorrect caption.  *See* Doc. 21, pp. v, 5, 17, 18.  The caption is *Ultratech Int'l, Inc. and Aqua-Leisure Industries, Inc. v. Swimways Corp.,* 2009 WL 8590873 (M.D. Fla. 2009).

willfulness, and concludes that there is no general bar against plaintiff's raising a willfulness claim, as an amendment, solely based on post-filing conduct without first seeking a preliminary injunction. Case No: 9:08-cv-171, 2009 U.S. Dist. LEXIS 130147, *12-13 (E.D. Tx. 2009). Similarly, the *DataQuill Ltd. v. High Tech Computer Corp.* court found that while some courts have held that *Seagate* bars claims for willful infringement after filing the complaint where an injunction was not sought, others found that certain circumstances could permit a claim for post-filing willful infringement where an injunction was not sought. 2011 WL 6013022, *13 (S.D. Cal. 2011).

Here, Brandywine alleges that T-Mobile learned of the patents-in-suit through filing the Original Action, from which this case was severed. *See* Doc. 1, ¶¶ 10, 22. It then alleges in a conclusory fashion that "T-Mobile's continued infringement despite [sic] its knowledge of the '922 patent and Brandywine's accusations of infringement has been objectively reckless and willful."[17] *Id.*, ¶ 14. A claim of willful infringement undisputedly requires facts showing that the alleged infringer engaged in actions despite an objectively high likelihood that its actions constituted infringement of a patent. *In re Seagate*, 497 F. 3d at 1371; *Pandora Jewelry*, 2009 WL 2029964, *1. Given that Brandywine alleges T-Mobile learned about the patents-in-suit when it filed the Original Action, it could not properly plead that T-Mobile was engaging in action despite an objectively high risk of infringement.

Additionally, Brandywine alleges that T-Mobile's actions were "objectively reckless and willful" but does not plead any facts allowing a plausible inference that T-Mobile's behavior was reckless. Doc. 1, ¶¶ 14, 26. To the contrary, the patents-in-suit are each described as a "Simultaneous Voice/Data Answering Machine" and T-Mobile's accused products are cell

---

[17] Brandywine asserts a parallel allegation regarding the '717 Patent at ¶ 26.

phones and voicemail.  *Id.*, ¶¶ 9, 21; *see* Doc. 1-Ex.1.  As T-Mobile notes, without facts alleging reckless behavior, the plausible inference is that T-Mobile's products reasonably interact in some form with the patents-in-suit.  Doc. 25, p. 9.

Therefore, because Brandywine has failed to allege that T-Mobile knew of the patents-in-suit and failed to allege facts demonstrating "objective recklessness", its claim of willful infringement and prayer for enhanced damages pursuant to 35 U.S.C. § 284  will be dismissed. *In re Seagate*, 497 F.3d at 1371; *i4i Ltd. Partnership,* 598 F.3d at 860.

### F.  Brandywine has failed to adequately plead joint infringement

The Federal Circuit has clarified the standard for joint infringement, which occurs when a method claim is directly infringed by the joint actions of several parties.  In *BMC Resources, Inc. v. Paymentech, L.P.*, the Federal Circuit recognized the tension between the fact that direct infringement requires a party perform every step of a claimed method, and the rule that "a defendant cannot thus avoid liability for direct infringement by having someone else carry out one or more of the claimed steps on its behalf."  *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1379 (Fed. Cir. 2007); 35 U.S.C. § 271(a).  The Federal Circuit concluded that where the actions of several parties combine to perform every step of a claimed method, a party is liable for joint infringement only where that party exerts control and direction over the entire process such that every step is attributable to the controlling party.  *Id.*, at 1380-81; *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1330 (Fed. Cir. 2008) (reversing judgment on joint infringement where defendant "neither performed every step of the claimed methods nor had another party perform steps on its behalf").  Here, Brandywine alleges joint infringement as follows:

> Furthermore, and/or in the alternative, upon information and belief, T-Mobile has committed joint infringement of the '922 patent.  T-Mobile and its handset makers, including, but not limited to, HTC America, Inc., have, acting jointly, infringed and continue to infringe at least claim 7 of the '922 patent.  Moreover, T-Mobile has

exercised and continues to exercise control and direction over the jointly infringing activities of its handset makers, including, but not limited to, HTC America, Inc.

Doc. 1, ¶ 13.[18]   T-Mobile argues the claim of joint infringement must be dismissed for two reasons: (1) the allegation fails to identify any accused product; (2) the claim fails to adequately allege a relationship that could give rise to joint infringement.  Doc. 17, pp. 19-22.

In its Response, Brandywine argues that joint infringement is a form of direct infringement, and that Form 18 sets the standard for pleading direct infringement.  Doc. 21, pp. 12-13.  Accordingly, Brandywine contends that it need not identify a specific product in alleging joint infringement because Form 18 does not require allegation of a specific product, and identifying a category of products will suffice.  *Id.*; citing *Sikes Cookers & Grill, Inc. v. Vidalia Outdoor Prods.,* 2009 WL 427227 (N.D. Ga. 2009); *Mesh Comm.*, 2010 WL 750337 (M.D. Fla. 2010); *XPoint Techs., Inc.*, 730 F. Supp. 349, 353 (D. Del. 2010).  However, because liability for joint infringement clearly requires proof of additional elements, such as control and direction over the other party, arguing that courts permit direct infringement claims when plaintiffs specify only a category of products is not particularly relevant to the sufficiency of a claim of joint infringement.[19]   *Muniauction*, 532 F.3d at 1330.  T-Mobile maintains that Brandywine's failure to identify a single product or service, instead accusing "jointly infringing activities" with its

---

[18] Brandywine asserts a parallel allegation regarding the '717 Patent at ¶ 25.

[19] Brandywine further argues that under the Form 18 standard, a plaintiff need not identify which patent claims are being asserted.  Brandywine attempts to distinguish *Eon Corp. IP Holdings LLC v. Flo TV Inc.*, 802 F. Supp. 2d 527, 535 (D. Del. 2011), in which the court dismissed a claim of joint infringement because "plaintiff's complaint [did] not provide specific facts explaining any alleged relationship among defendants" because the District of Delaware imposes a heightened pleading standard for joint infringement claims, claiming that the Middle District of Florida "in contrast, holds that Form 18 applies to all types of patent infringement claims."  Doc. 21, p. 14; *citing CBT Flint*, 529 F. Supp. 2d 1376 (N.D. Ga. 2007).  As discussed in section III(a), *CBT Flint* was decided before the Supreme Court's holding in *Global-Tech* that knowledge is required for indirect infringement.  Moreover, *CBT Flint* says nothing about claims of joint infringement and thus Brandywine's reliance upon it, as a counterpoint to *Eon Corp. IP Holdings*, is misplaced.

handset makers, such as HTC America, Inc., is insufficient to create a plausible inference that it committed joint infringement.  Doc. 17, pp. 19-20; *citing Ware v. Circuit City Stores, Inc.*, 2010 WL 767094, *2 (N.D. Ga. 2010) (plaintiff's allegation that defendant sells apparatuses covered by a claim of the patent in suit, including its use of financial card transaction systems, was found to be insufficient identification to put defendant on notice of its allegedly infringing products); *Prestige Pet Prods., Inc. v.  Pingyang Huaxing Leather & Plastic Co., Ltd.*, 767 F. Supp. 2d 806, 816 (E.D. Mich. 2011) ("The minimum corpus of factual allegations sufficient to establish a plausible claim would necessarily include the identity of the specific infringing products and some articulated reasons to suspect that the products were made in violation of the patent-in-suit.").  It is not evident that Brandywine's identification of four specific products earlier in the Complaint, T-Mobile's Comet, G2x, Sidekick 4G, and the HTC Wildfire S, relates to its claim of joint infringement.[20]   Doc. 1, ¶¶ 12, 24.   As T-Mobile notes, the allegations for joint infringement do not include the previously defined "T-Mobile Accused Services and Products."[21] Doc. 25, p. 7.  The Court agrees that Brandywine's allegation of joint infringement fails to sufficiently identify a specific product or category of T-Mobile's products.

Second, the Court agrees with T-Mobile that Brandywine has not alleged that the relationship between T-Mobile and HTC America, Inc., the third party named in the Complaint, is one in which T-Mobile exerts control and direction over the entire process such that every step is attributable to T-Mobile.  *BMC Resources, Inc.*, 498 F.3d at 1380-81; *Muniauction,* 532 F.3d at 1330.  The Federal Circuit held that a party only exhibits "control or direction" "in situations

---

[20] Moreover, Brandywine alleges that these four products, which allegedly infringe upon the '922 and '717 patents, are not T-Mobile's only infringing products.  Doc. 1, ¶¶ 12, 24.

[21] T-Mobile further argues that such identification would be implausible, because the one named alleged joint infringer, HTC America, Inc. does not manufacture the Comet, G2x, or Sidekick 4G.  Doc. 25, p.7, n.4.

where the law would traditionally hold the accused direct infringer vicariously liable for the acts committed by another party that are required to complete performance of a claimed method." *Muniauction,* 532 F.3d at 1330.   Indeed, the controlled party "must perform the steps of the patented process by virtue of a contractual obligation or other relationship."   *Global Patent Holdings, LLC v. Panthers BRHC, LLC,* 586 F.Supp. 2d 1331, 1335 (S.D. Fla. 2008) (dismissing claim of joint infringement because plaintiff did not allege that individuals visiting defendant's website were under defendant's "direction or control.").

In response, Brandywine argues that its allegation "clearly alleges that there is some relationship" between T-Mobile and HTC America, Inc. and that "it may be inferred from this paragraph that some form of contractual relationship exists between the two."[22]   Doc. 21, p. 14. Brandywine argues that because the accused functionality in these cases relates to the management and storage of cellphone messages, it is plausible, if not probable, to infer that the named parties entered into a contractual relationship with one another.   *Id.*   By contrast, Brandywine maintains that the cases T-Mobile cites provide facially implausible claims that one party controls the actions of the other, such as in *Global Patent Holdings,* where it would be implausible to infer that a website operator could control remote users to the extent required for joint infringement.[23]   *Id.*; *Global Patent Holdings,* 586 F. Supp.2d at 1335.   However,

---

[22] Brandywine submitted one Response to the twelve pending motions to dismiss for the '922 and '717 Patents group of cases.  *See* Doc. 21, p. 1 (Because these motions raise the same arguments, Brandywine will respond to *all* 12 motions with this opposition. This same opposition will be filed in all 12 cases.").  Therefore, the Court infers from its argument that a contractual relationship "between Motorola and AT&T Mobility" may be inferred, that it makes a similar argument about a plausible relationship between T-Mobile and HTC America, Inc. Doc. 21, pp.14-15.

[23] In *Global Patent Holdings,* however, the issue was not the facial implausibility of direction and control, but rather that "Plaintiff has, in no way, alleged that remote users are contractually bound to visit the website, it has not alleged that remote users are Defendant's agents …" *Global Patent Holdings,* 586 F. Supp. 2d at 1335.

Brandywine misstates its obligation.  The issue is not whether it is plausible that T-Mobile would enter into a contractual relationship with HTC America, Inc., (and possibly with other unnamed joint infringers), such that it exerts the amount of control necessary for joint infringement, but rather that Brandywine has not alleged any such relationship in its Complaint.

Brandywine has failed to identify T-Mobile's product/s that are involved in joint infringement, and has failed to allege that T-Mobile exerts control and direction over HTC America, Inc. such that the entire patented process may be attributed to T-Mobile. *Muniauction*, 532 F.3d at 1330; *BMC Resources,* 498 F.3d at 1379.  Accordingly, Brandywine's allegations of joint infringement of the '922 and '717 Patents fail to state a claim upon which relief can be granted, and will be dismissed.

## IV.   CONCLUSION

For the aforementioned reasons, the Court grants T-Mobile's Motion to Dismiss Brandywine's claims of induced infringement, contributory infringement, willful infringement, and joint infringement for failure to state claims upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

Accordingly, it is hereby **ORDERED**:

1. Defendant T-Mobile U.S.A., Inc.'s Motion to Dismiss Claims of Induced, Contributory, Willful, and Joint Infringement (Doc. 17) is **GRANTED**.

2. Plaintiff Brandywine Communications Technologies, LLC is granted leave to file an amended complaint, which cures the deficiencies addressed in this Order,  within **FOURTEEN (14) DAYS** from the date of this Order.

**DONE** and **ORDERED** in Orlando, Florida on October 24, 2012.

Charlene Edwards Honeywell
United States District Judge

**Copies furnished to:**
Counsel of Record